IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY P. MARRON,           )
                             )
        Plaintiff,           )
                             )
    v.                       )    Case No. 11-cv-2584
                             )
EBY-BROWN COMPANY, LLC,      )    Judge Robert M. Dow, Jr.
                             )
        Defendant.           )

**MEMORANDUM OPINION AND ORDER**

Defendant employed Plaintiff as a network manager from June 11, 2007 to December 6, 2010. In this lawsuit, Plaintiff alleges that Defendant (A) terminated his employment and (B) subjected him to a hostile work environment because of his religion (Jehovah's Witness) and (C) retaliated against him for complaining about religious discrimination and harassment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Currently before the Court is Defendant's motion for summary judgment [30]. For the reasons stated below, Defendant's motion is granted.

**I.    Background**

The Court draws the following background primarily from the parties' Local Rule 56.1 statements [32, 39]. As courts in this district have explained many times, Rule 56.1 requires that factual allegations be supported by admissible record evidencqe. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). Where a party has offered a legal conclusion or a statement of fact without proper evidentiary support, the Court will not consider that

1

statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact without adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).

In this case, Plaintiff has mostly ignored Local Rule 56.1(b)(3)(B), which requires the nonmovant to file "a response to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Most egregiously, instead of "specific references" to the record, Plaintiff — through counsel — repeatedly registered his disagreement as follows:

> **RESPONSE: Plaintiff agrees with some of the sentences in the above paragraph** [number of the paragraph above] **and disagrees with others. (see Plaintiff's Rule 56 Exhibit 1 – Affidavit of Plaintiff and accompanying Affidavit exhibits and emails)**

See [39] (bold and punctuation in original). In one paragraph after another, Plaintiff's responses to Defendant's statements left the Court to wonder which statements he admits, which he disputes, and why. Turning to Plaintiff's "Rule 56 Exhibit 1" for an explanation, the Court finds a 112-page document repeating Plaintiff's responses to Defendant's statement of facts, this time with occasional citations to the record but, frequently, with denials in the form of a first-person narrative. For example:

> **RESPONSE: Plaintiff denies the allegations of sentence number one.**
>
> **I disagree, in a boss and subordinate relationship, the boss owns the relationship, Brian Kenny, as my boss dictated the relationship. It is**

> **incorrect to say "Marron and Kenny did not get along". I was friendly and worked hard. Brian Kenny made our relationship tense and uncomfortable.**

See [39-1 at 10] (bold in original).  In addition to offering a second response to Defendant's statement of facts, Exhibit 1 collects e-mails and performance reviews, among other things.  Perhaps the basis of a better response to Defendant's statement of facts is somewhere to be found.  But as the Seventh Circuit has stressed, facts are to be set forth in Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts.  See, *e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  It simply is not the Court's job to sift through the record in search of evidence to support a party's claim.  *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006).  That, however, is precisely what Plaintiff has invited the Court to do.  The Court respectfully declines.  Thus, the Court will not consider Plaintiff's improper denials of Defendant's statements and will deem those statements admitted.  See *Malec*, 191 F.R.D. at 583-84 ("Local Rule 56.1(b)(3) governs the nonmovant's response to the movant's statement of facts and the nonmovant's statement of additional facts.  This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire. Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted."); see also *Koszola v. Bd. of Educ. of the City of Chicago, 385 F.3d 1104, 1109* (7th Cir. 2004) (confirming that a district court has broad discretion to require strict compliance with Local Rule 56.1); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).

With that, the Court turns to the facts of this case, recounting them (regardless of their source) in a light most favorable to Plaintiff, the nonmovant. See, *e.g.*, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (stressing that on summary judgment, courts must look "at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true"). To begin, Plaintiff does not claim to have had problems with his first supervisor, Mike Ward. At some point, however, Plaintiff was assigned a different supervisor, a man named Brian Kenny. Blame aside, it is evident that Plaintiff and Kenny did not get along. Plaintiff felt that Kenny ignored him during management and one-on-one meetings because Kenny would sometimes roll his eyes and look away from him. Plaintiff also felt that Kenny paid more attention to other managers and criticized other managers less than he criticized Plaintiff.

In January 2010, Plaintiff felt that his relationship with Kenny deteriorated after Plaintiff submitted a work proposal to redo certain IT projects. Apparently Kenny did not like the idea. He began to leave what Plaintiff considered "angry" voicemails stating that "You [Plaintiff] better or you best do certain things." Plaintiff also felt that Kenny did not include him in certain meetings and that he was blamed for projects handled by other employees.

On July 12, 2010, Plaintiff met with Kenny and a help desk employee named Andrew Pringle in Kenny's office to discuss an ongoing camera installation project coordinated by Pringle. During the meeting, Plaintiff complained that the cameras could not be installed because Pringle had not provided Plaintiff with scale drawings of the installation site. Plaintiff believed that Kenny then inappropriately berated him in front of Pringle for refusing to work from the not-to-scale drawings.

The incident at the July 12 meeting, and the generally tense relationship between Kenny and Plaintiff, prompted Plaintiff to contact Paul Lencioni in human resources. On July 13 at 8:03 a.m., Plaintiff sent Lencioni the following e-mail:

> Hello Paul,
>
> I would like to share some information and express my concerns. I only ask that you keep this information confidential. I have some concerns about my relationship with my manager Brian Kenny. I feel that he scrutinizes my work and criticize [sic] me and my team more than the other two managers under him. Also in the last six months I feel that he has become more aggressive and at times I get voicemails from him where he is upset and using terms like "you better" or "you'd better" in a threatening way. I feel that I am and have proven myself a highly motivated worker. Threats only demoralize one and repeated threatens [sic] are really harassment.
>
> Let me know when you have time to talk.
>
> Thank you
>
> Greg

At 8:38 a.m., Lencioni asked Plaintiff if he could "swing by now." Two minutes later, Plaintiff responded that he'd "be there shortly." Plaintiff did not tell Lencioni that he had a previously-scheduled 9:00 a.m. meeting with Kenny, Pringle, and several Eby-Brown vice-presidents to discuss network management issues, and Plaintiff did not suggest to Lencioni that they meet after the scheduled meeting. Instead, just before going into Lencioni's office, Plaintiff sent Kenny an e-mail saying that he would not attend the 9:00 a.m. meeting. In the same e-mail, Plaintiff included "pertinent info" Kenny would need for the meeting. At 8:56 a.m., Kenny wrote back asking why he couldn't make the meeting. At 9:05 a.m., Kenny e-mailed again telling Plaintiff that he did not understand the information Plaintiff had provided and asked again why he couldn't make the meeting.

While Kenny was trying to reach Plaintiff by e-mail, Plaintiff was telling Lencioni how Kenny was a "kind of frantic" and "last minute" person, and that Plaintiff thought Kenny was "always over his shoulder." Plaintiff and Lencioni also discussed Plaintiff's meeting with Kenny and Pringle the day before and his complaints about Kenny's "angry" voicemails. Plaintiff did not mention his religion or that he thought that Kenny was treating Plaintiff in a way that he did not like because of his religion.

When Plaintiff returned to his desk after meeting with Lencioni, he responded to Kenny's second e-mail about the missed meeting. He explained that he missed the meeting because he "needed to calm down. I'm upset enough with the way [Pringle] has handled the [camera installation project]. I don't want to go off on him or anyone else there."

Later that same day, Kenny contacted his own manager about Plaintiff's unexcused absence from the 9:00 a.m. meeting, the poor communication between him and Plaintiff, and the problems at the previous day's meeting. They agreed that Plaintiff should be disciplined. Two days later, on July 15, Kenny and Lencioni met with Plaintiff to issue him "written counseling" regarding his absence and conduct. Plaintiff was informed that failure to meet his employer's expectations could result in additional disciplinary action, including termination.

Plaintiff testified that several minutes after the written counseling meeting concluded, Lencioni pulled him "to the side and was talking to me about the discipline a little bit more." Lencioni said that Kenny felt that Plaintiff was not a team player. Lencioni then mentioned Plaintiff's religion and asked if his religion caused him to be "withdrawn" and "not a team player." Plaintiff told Lencioni that was not the case. (That was one of two express references to Plaintiff's religion. The other was in a conversation between Plaintiff, Kenny, and Ward.

Catholicism came up in the conversation, and Kenny or Ward made a comment to the effect of "oh, you're from that religion.")

During the fall of 2010, Defendant was involved in major technological conversion. On September 30 and October 1, 2010, approximately two weeks before the scheduled conversion at Defendant's Plainfield, Indiana facility, Plaintiff missed two days of work with the flu. Kenny was concerned about the conversion and cancelled a speaking engagement for Plaintiff at a conference in Texas scheduled around the time of the Plainfield conversion. On December 2, Plaintiff took another sick day. Plaintiff took the next day off too, using a pre-scheduled vacation day. While Plaintiff was out, Kenny called and e-mailed him about the upcoming conversion at Defendant's facility in Montgomery, Illinois. Due to certain "outstanding items," the Montgomery conversion had to be delayed, at significant expense to the company.

Kenny was disappointed with Plaintiff's absences and his level of responsiveness during the conversion period. Kenny decided that Plaintiff should be terminated. Lencioni informed Plaintiff that he was terminated on Monday, December 6, 2010. Plaintiff testified that he learned of his termination on the previous Friday from one of Defendant's third-party vendors.

Approximately one month after his termination, Plaintiff filed a charge of religious discrimination. He obtained a right-to-sue letter, and, on April 14, 2011, filed a six-count complaint alleging discrimination in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), breach of contract (Count III), wrongful discharge (Count IV), defamation (Count V), and violation of the Illinois Human Rights Act (Count VI). Defendant moved to dismiss Counts III – VI. The Court granted the motion. Currently before the Court is Defendant's motion for summary judgment on Plaintiff's remaining claims.

7

## II. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in

many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id*. Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## III. Analysis

### A. Discrimination

Plaintiff alleges that he was terminated because of religion in violation Title VII. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer * * * to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin * * * ."). Plaintiff may prove discrimination using either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reiterating that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Under the direct method of proof, a plaintiff may introduce either direct or circumstantial evidence to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id*.; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). In other words, a plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263,

272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. at 802-04. In order to establish a *prima facie* case of religious discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 364-65 (7th Cir. 2009). If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Patterson*, 589 F.3d at 365. Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is pretext. *Patterson*, 589 F.3d at 365.

In support of its motion for summary judgment on Plaintiff's discriminatory discharge claim, Defendant argues that Plaintiff has not created a triable issue by either method of proof. In short, Defendant argues that Plaintiff has no direct evidence of discriminatory intent and, under the indirect method, there is (at minimum) no basis for concluding that the reasons Defendant has offered for terminating Plaintiff's employment are a pretext for discrimination. See [31 at 9-14].

Plaintiff's argument in opposition, in its entirety (minus generic statements of law about the direct and indirect methods of proof), is as follows:

> In the instant case Plaintiff can establish that he was treated in a way no employee who was not one of Jehovah's Witnesses was treated. Although other employees did not have the same title as Plaintiff some were much more underperforming than Plaintiff but they were not terminated and received the benefit of progressive discipline. All employees regardless of title were subject to the same disciplinary policies. The chilling direct inquiries relating to Plaintiff's religion and his [sic] being a team player can be viewed by a reasonable juror as part of the mosaic of evidence directly establishing discrimination and explaining the hostile work environment he experienced. Summary judgment is not appropriate.

See [40 at 10]. As discussed above, it is not the Court's job to make Plaintiff's argument, to actually assemble the "mosaic," to figure out who Plaintiff claims as comparators, why Defendant's reasons for terminating Plaintiff are a lie, and so forth. Plaintiff hints at a couple arguments that are supported by record evidence, and the Court can address those.

First, Plaintiff refers to the comment from Kenny (or Ward) to the effect of "oh, you are from that religion," and the question from Lencioni about whether his religion made him "withdrawn" or not a "team player." Months after those comments were made, Plaintiff was terminated. The comment and the question do not create a triable issue about Plaintiff's termination. Plaintiff has not shown that there is "a real link between the bigotry [assuming for the moment that is what the comment and the question expressed] and an adverse employment action." *Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 672 (7th Cir. 2011) (quoting *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)). A reasonable jury could not conclude that an isolated comment by Kenny and an (arguably) inappropriate question by Lencioni create a "convincing mosaic of circumstantial evidence" supporting an inference of intentional discrimination. *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011). Second, shifting to the indirect method, Plaintiff suggests that he wants to make his case using comparator evidence, but he does not identify comparators. Third, Plaintiff suggests that the comment by Kenny and the question

11

from Lencioni establish pretext. But in order to establish pretext a plaintiff must "specifically refute facts which allegedly support the employer's proffered reasons; conclusory statements about an employer's prejudice are insufficient to establish pretext." *Jackson v. Am. Airlines, Inc.,* 2008 WL 4211121, at *8 (N.D. Ill. Sept. 10, 2008) (internal quotations and citations omitted). Plaintiff admits that he did not have a good working relationship with Kenny, and that problems in that relationship were related to differences in the way they work. Without violating Title VII, Plaintiff could have been fired for those differences. Plaintiff has not offered any reasons for the Court to doubt that those were Defendant's real reasons for terminating Plaintiff.

In sum, Plaintiff has not come forward with direct evidence of discriminatory intent linked to his termination, and, by the indirect method, Plaintiff has failed to state a *prima facie* case or, much less, show that Defendant's reasons for terminating him are a pretext for discrimination. Defendant is entitled summary judgment on Plaintiff's discriminatory termination claim.

### B. Hostile Work Environment

In order to establish a *prima facie* case of a hostile work environment, a plaintiff must demonstrate that (1) he was subject to unwelcome harassment; (2) the harassment was based on his religion; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012); *Luckie v. Ameritech Corp.,* 389 F.3d 708, 713 (7th Cir.2004); see also *Dear v. Shinseki,* 578 F.3d 605, 611 (7th Cir. 2009). To satisfy his burden, a plaintiff must present evidence showing "a workplace permeated with discriminatory ridicule, intimidation, and insult." *Luckie*, 389 F.3d. at 714. The

12

Court considers "the totality of the circumstances, including the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Porter*, 700 F.3d at 955-56 (internal citations omitted).

In an attempt to sustain his hostile work environment claim, Plaintiff adds to the comment from Kenny and the question from Lecioni that "Plaintiff was harassed even at home when he was sick. His confidentiality was betrayed. Plaintiff was delivered up to his supervisor for punishment for missing a meeting with his boss because he was meeting with HR to file his complaint of harassment." See [40 at 11]. But nothing about phone calls about a project or discipline for ditching a meeting suggests that Plaintiff was harassed based on his religion. And just as fundamentally, Plaintiff has not described a workplace "permeated with discriminatory ridicule, intimidation, and insult." See, *e.g.*, *Porter*, 700 F.3d at 956 (summary judgment affirmed because a reasonable jury could not find the defendant's conduct "objectively offensive, sever, or pervasive"). Plaintiff did not get along with his supervisor, he did not think HR was on his side, and his employer knew his religion, but that just means that he did not like certain aspects of his job. That simply is not enough to sustain a hostile work environment claim. See, e.g., *Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994) ("[Title VII] does not guarantee a utopian workplace, or even a pleasant one. If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts."). Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## C. Retaliation

Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Brown*, 499 F.3d at 684 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 662 (7th Cir. 2006) (quotations and citations omitted).

"Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted). Alternatively, under the indirect approach, in order to establish a *prima facie* case for retaliation, the employee must show that (1) after opposing an unlawful employment practice or filing a charge of discrimination, the employee was subject to adverse employment action; (2) at the time, the employee was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action. See *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir. 2004); 42 U.S.C. § 2000e-3(a). "'If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.'" *Tomanovich,* 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998)). Then, if the employer presents evidence of a non-discriminatory reason for its employment action, "'the

burden shifts back to the plaintiff to demonstrate that the employer's reason is pre-textual.'" *Id.* (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005)).

In support of its motion for summary judgment, Defendant argues that Plaintiff does not have a viable retaliation claim because "he never complained or even hinted to Lencioni or any other member of Eby-Brown management that he perceived himself to be a victim of discrimination or harassment based on his religious beliefs." [31 at 15]. Thus, Defendant argues, Plaintiff does not claim that he engaged in a protected activity, and so he cannot prevail on a retaliation claim. In opposing summary judgment, Defendant's entire argument is as follows: "Defendant [sic] has established by the evidence above that under either the direct or the indirect method Plaintiff can show that he engaged in any statutorily protected activity which was causally related to his different treatment and termination. Reviewing the evidence in the light most favorable to Plaintiff [sic] summary judgment is not appropriate." [40 at 17].

In opposing summary judgment, Plaintiff has offered conclusions without argument. In particular, Plaintiff makes no attempt to demonstrate that he engaged in a statutorily protected activity and that his protected activity was related to his termination. Plaintiff's unsupported conclusions constitute a waiver of his retaliation claim. See, *e.g.*, *McCoy v. Maytag*, 495 F.3d 515, 525 (7th Cir. 2007) (cursory and undeveloped arguments are deemed waived); *Smith v. Northeastern Illinois Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (same). Even if not waived, Plaintiff's retaliation claim is hopeless. Plaintiff has not even asserted that he engaged in a protected activity. Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment [30] is granted. A rule 58 judgment in favor of Defendant and against Plaintiff will be entered in a separate document.

Dated: March 7, 2013

Robert M. Dow, Jr.
United States District Judge